70915. VINEY v. AERO-MAYFLOWER TRANSIT
COMPANY, INC.
(336 SE2d 825)

POPE, Judge.
Appellant shipper brought this action against appellee common carrier to recover the value of a coin collection. The basis for the action is a contract entered into by the parties in November 1976 pursuant to which appellee was to transport appellant's household goods from Virginia to Georgia. Appellant alleges that he delivered his coin collection to appellee in Virginia for shipment and that appellee is now liable for the full value thereof because the collection did not arrive in Georgia with the remainder of appellant's goods in December 1976. Appellant's complaint sounds in both contract and tort, but the trial court granted appellee's motion for partial summary judgment limiting any possible liability of appellee at the trial of this case to a maximum of $5,000 and dismissing all of appellant's claims in excess thereof. We granted appellant's petition for interlocutory review.

On appeal appellant asserts that appellee is liable both in contract and in tort for the loss of his coin collection. In support of this assertion, appellant points to the following facts of record: Although the coin collection was not listed as a separate item on the bill of lading, appellant contends that he pointed out to appellee's agent at the time the goods were picked up that the collection was in a dresser drawer and asked that it be insured. Following the agent's instructions, appellant inserted the amount of $5,000 and affixed his signature in spaces provided on the contract indicating a released value[1] which the entire shipment was not to exceed. Appellant was billed separately for this purported "insurance." The shipment was delivered minus the coin collection.

1. Appellant argues that the contract in this case created a "special relationship" between him and appellee, viz, that of shipper and common carrier, from which the law implied certain duties, a breach of which would constitute a tort. Clearly, under the facts in this case appellant may pursue both a cause of action ex contractu, for breach of contract, and one ex delicto, for breach of the public duty imposed upon common carriers. See, e.g., *Ellis v. Taylor*, 172 Ga. 830 (159 SE 266) (1931); *Southwestern R. v. Thornton*, 71 Ga. 61 (2) (1883). See generally *Louisville & N. R. Co. v. Spinks*, 104 Ga. 692 (30 SE 968) (1898); Prosser, Law of Torts, § 92 (4th ed. 1971); 1 CJS, Actions, § 49 (e) (4). He may not, of course, recover under both theories, but must make an election prior to the entry of judgment. See generally *UIV Corp. v. Oswald*, 139 Ga. App. 697 (229 SE2d 512) (1976); *Bell v. Sigal*, 129 Ga. App. 249 (199 SE2d 355) (1973). Under either cause of action the measure of damages for the loss of appellant's coin collection is the same — "the value of the goods at the intended destination, plus interest thereon, less the charges for freight." Cobb & Eldridge, Ga. Law of Damages (2nd ed.), § 15-4 at 260. See also 13 CJS, Carriers, § 264 (b) (1). However, under the Interstate Commerce Act "[a] limitation of liability may be created where the value of the shipment is declared in writing by the shipper." *McCarthy v. Allied Van Lines*, 160 Ga. App. 725, 726 (288 SE2d 69) (1981). See *American R. Exp. Co. v. Estroff*, 159 Ga. 58 (2) (125 SE 40) (1924). The trial court's summary judgment order has limited appellant's potential recovery to $5,000, apparently finding as a matter of law that this amount was the released value of the shipment under the Interstate Commerce Act.

Appellant seeks to enlarge upon his potential recovery of damages by alleging that fraud was committed by appellee in that it never

---

[1] "The released value of a shipment is the value declared by the shipper and to which he is limited in case of loss or damage to the shipment." *Marohn v. Burnham Van Services*, 478 FSupp. 49, 50 n. 2 (N.D. Ill. 1979).

intended to return the coin collection to him. Appellant's factual basis for this allegation is that appellee's agent improperly (i.e., incompletely) instructed him on how to "insure" his collection and also that appellee never obtained the "insurance" which appellant had "purchased." These assertions disclose some confusion as to the nature of the shipper/common carrier relationship. "At common law the liability of a common carrier for goods intrusted to the carrier for shipment was absolute, save only that the carrier could be absolved upon proof being made that the injury was occasioned by the act of God or of the public enemy. [Cits.] *Most of the courts, including our own, refer to such liability as being that of an insurer*; while others point out that such relationship does not technically exist, and that the term is used only as expressing absolute liability, subject only to the exceptions named, and independently of any question of negligence." (Emphasis supplied.) *Southern R. Co. v. Standard Growers Exchange,* 34 Ga. App. 534 (1) (130 SE 373) (1925). The Interstate Commerce Act, 49 USCA § 20 (11) (now 49 USCA § 10730), provides for similar absolute liability. See *Trans-American Van Service, Inc. v. Shirzad,* 596 SW2d 587 (1) (Tex. Civ. App. 1980). Indeed, it appears that Interstate Commerce Commission regulations prohibit the selling of insurance coverage by a common carrier on shipments delivered to it for carriage. See *McCarthy v. Allied Van Lines,* supra at 726. What the facts cited by appellant disclose is not evidence of fraud, but rather is evidence that appellee's agent adequately instructed appellant on how to protect himself in the event of the loss of his coin collection. See generally *McCarthy v. Allied Van Lines,* supra; *Marohn v. Burnham Van Services,* supra. Accordingly, the trial court properly granted summary judgment on appellant's fraud claim.

2. Nevertheless, on the basis of the record before us, we must reverse the trial court's entry of summary judgment in favor of appellee limiting appellant's potential recovery to $5,000. The impetus for appellant's move from Virginia to Georgia was his obtaining employment with Lockheed Georgia Company. Lockheed agreed to pay appellant's moving expenses and instructed him to select a carrier of his own choosing to move his household goods. Upon appellant's selection of appellee, the order for service was prepared by Lockheed and forwarded to appellee. The service order indicates the released value of the shipment to be $1.25 for each pound of weight in the shipment. The freight bill, however, indicates a charge for "valuation" of the shipment based upon the figure "8,300." The freight bill also indicates that appellant was billed separately for a portion of the total charges. The bill of lading, in addition to showing appellant's released value of the shipment as $5,000, also shows a charge for valuation for "$3300.00 [at] 1.25" (2610 lbs. [the weight of the shipment] x $1.25 [Lockheed's released value] = $3,262.50 — $3,300 when rounded to

559

the nearest $100). These circumstances reveal a question of fact as to the actual released valuation of the shipment. It follows that the trial court's summary judgment order limiting appellant's recovery to $5,000 was in error and must be reversed.

*Judgment affirmed in part; reversed in part. Deen, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 25, 1985.

*Michael H. Saul*, for appellant.
*Rex D. Smith*, for appellee.