## S97G1593. WALTON ELECTRIC MEMBERSHIP CORPORATION v. SNYDER.
### (508 SE2d 167)

HINES, Justice.

We granted certiorari in *Walton Electric Membership Corp. v. Snyder,* 226 Ga. App. 673 (487 SE2d 613) (1997), to determine whether an electric membership corporation (EMC) may be subject to tort liability for wrongful termination of electric service, and if so, whether an award of punitive damages may be allowed. Finding that an EMC may be tortiously liable for wrongful termination, and that punitive damages may be awarded where appropriate, we affirm.

On August 26, 1992, Deborah Patton arranged with Walton Electric Membership Corporation (Walton) for electricity to her residence at Kings Mill Run in Clarke County.[1] Howard Snyder began receiving electricity from Walton for his separate residence in September 1993. In October 1993, Patton vacated her Kings Mill Run residence leaving an overdue balance on her electric bill. She moved in with Snyder and they were married in December 1994. In January 1995, Snyder purchased the Kings Mill Run residence that was formerly occupied by his wife and the couple moved into it together.

Snyder applied for electric service to the Kings Mill Run residence under his existing account; no new membership application was required because he had previously signed an application. After electric service was begun at Kings Mill Run, Walton became aware that Snyder's wife had a past due account for the same residence. Snyder's application for electric service stated that membership of a husband and wife would be a joint membership, a policy repeated in Walton's bylaws; Snyder's application also stated he would be bound by those bylaws. Walton transferred Patton's outstanding debt to Snyder's membership account, but Snyder refused to pay the outstanding balance. Walton's regulations stated that one reason for discontinuing service would be: "Member having old debt living at [service] location with account in some other name." After notice, Walton disconnected Snyder's electricity for approximately 24 hours for the failure to pay $301.28 plus late fees. Snyder was forced to stay overnight in a motel and paid the debt "under protest." He filed suit

---

[1] Walton is a member-owned electric supply corporation, also known as an "electric co-op."

claiming wrongful termination of electric service, seeking actual and punitive damages.

The trial court granted Snyder's motion for summary judgment as to Walton's liability in tort for wrongful termination, and denied Walton's cross-motions for summary judgment, reserving the issues of actual and punitive damages for trial. The Court of Appeals affirmed.

1. Walton argues that no tort liability may lie because its termination of Snyder's electric service was, if in any way wrong, simply the breach of a contractual obligation. However, in some instances the breach of a contractual duty may also constitute a tort. See *Viney v. Aero-Mayflower Transit Co.*, 176 Ga. App. 556, 557 (1) (336 SE2d 825) (1985); *Atlanta Gas Light Co. v. Newman*, 88 Ga. App. 252 (76 SE2d 536) (1953); see also OCGA § 51-1-11 (a).

A tort may lie, even when a contract exists, when a public duty also exists. See *Viney*, supra; *Bulmer v. Southern Bell Tel. &c. Co.*, 170 Ga. App. 659, 659-660 (317 SE2d 893) (1984). An EMC is a business of a public nature designed to meet a public necessity, in the same manner as is a gas company. See *Lawrence v. Atlanta Gas Light Co.*, 49 Ga. App. 444, 447 (1) (176 SE 75) (1934). The statutory scheme giving rise to EMCs is similar to the grant of a franchise from the state to operate a utility for the benefit of the citizenry, and this grant imposes a duty to the public.[2] See *Freeman v. Macon Gas &c. Co.*, 126 Ga. 843, 845-846 (56 SE 61) (1906). Thus, this duty may provide a basis for tort liability even when a contract exists for the provision of electric service. Accordingly, the tort of wrongful termination of utilities has been recognized.[3] See *Freeman*, supra; *Southern Bell Tel. &c. Co. v. Earle*, 118 Ga. 506, 510-511 (5) (45 SE 319) (1903); *Hunnicutt v. Ga. Power Co.*, 168 Ga. App. 525 (309 SE2d 862) (1983); *Lawrence*, supra.

Walton also argues that, because its customers are also its members who ultimately control the corporation, an EMC should not be liable for wrongful termination in the same manner as a for-profit corporation might be. Such a distinction does not demand a shield from tort liability. An EMC is also possessed of a public duty, and as such, an action in tort for wrongful termination of utilities will lie.

2. Walton contends that, as a matter of public policy, punitive damages should not be assessed against an EMC. An EMC has statu-

---

[2] That EMCs are intended to have a public duty can be seen in their stated purposes, OCGA § 46-3-200, and the breath of authority given them, such as the power to condemn property. OCGA § 46-3-201 (b) (9).

[3] When termination is due merely to the defendant's neglect, the action will usually lie only in contract. See *Wittke v. Horne's Enterprises* 118 Ga. App. 211, 216 (162 SE2d 898) (1968); *Atlanta Gas Light Co. v, Newman*, 88 Ga. App., supra.

tory power to sue and be sued, see OCGA § 46-3-201 (a) (3) (C), and there is no statutory exemption from liability for punitive damages. In *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991), this Court held that the public policy of this state required that, as a *governmental entity*, MARTA not be subject to an award for punitive damages. An EMC is not a governmental entity and the same interests of preventing punishment of the taxpayers is not present. See *Martin v. Hosp. Auth. of Clarke County*, 264 Ga. 626, 627, n. 3 (449 SE2d 827) (1994). The legislature has provided for punitive damages, see OCGA § 51-12-5.1, and in this circumstance, there is no public policy interest that would prevent the application of that statute.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 26, 1998.

*Lambert & Roffman, E. R. Lambert, Marvin J. Reitman, Jr.,* for appellant.
*Crowther & Green, James M. Green, Gerald W. Bruce,* for appellee.
*Tisinger, Tisinger, Vance & Greer, Richard G. Tisinger, Sr.,* amicus curiae.